IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BILLY G. ASEMANI , #339096 | : |
| Plaintiff | : |
| v. | : Civil Action No. AMD-05-2821 |
| UNITED STATES OF AMERICA | : |
| Defendant | : |

MEMORANDUM

This case was filed pursuant to the Federal Torts Claim Act, 28 U.S.C. § 2671, *et seq*. ("FTCA"), by Billy G. Asemani, a former federal immigration detainee who is presently a Maryland state inmate.[1] Plaintiff seeks damages for false arrest, intentional infliction of emotion distress, and gross negligence based on alleged injuries he sustained as a detainee in Pennsylvania of the Department of Homeland Security ("DHS") in 2004. In October 2005, the United States District Court for the District of Columbia transferred this case to this court.[2] The United States has filed a motion to dismiss, or in the alternative for summary judgment. As defendant relies on materials outside of the complaint the motion shall be construed as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. A hearing is unnecessary. For the reasons set forth within, the motion shall be granted.

---

[1] On April 24, 2006, plaintiff pled guilty in the Circuit Court for Howard County to attempted second-degree murder of his wife. He is serving a 30-year sentence.

[2] After the case was transferred to this court, the government filed a motion to dismiss or for summary judgment. Thereafter, plaintiff was arrested and charged with criminal offenses in Howard County. Plaintiff advised the court that he was detained at a mental hospital and unable to respond to the government's motion. On May 19, 2006, the court denied the government's dispositive motion and stayed this case. On March 20, 2007, plaintiff advised the court that he was no longer hospitalized and the case was returned to the active docket.

Background

Plaintiff's claims arise from events that occurred on July 23-24, 2004, while he was a DHS detainee being transported to and from immigration proceedings in Philadelphia. Plaintiff claims that he is a "U.S. national" and was therefore wrongfully detained and imprisoned by the INS. Further, he asserts that officers acted improperly when he became ill in the van transporting him to a detention facility in York, Pennsylvania. Plaintiff states that the van was so hot that he vomited, lost consciousness, and foamed at the mouth.

Defendant's exhibits show that Asemani is citizen of Iran who adjusted his status to that of a lawful permanent resident in 1994.[3] After his wife became a U.S. citizen, plaintiff applied for citizenship in August 1997 and 1999, but never completed the naturalization process. On June 1, 2004, an immigration judge in York, Pennsylvania, ordered plaintiff's removal to Iran based on his conviction in the United States District Court for the Southern District of Mississippi of eleven counts of healthcare fraud, mail fraud and false statements, in violation of 18 U.S.C. §§1341, 1347 and 1035, for which he was sentenced to 30 months incarceration..

While plaintiff was in federal custody, the Immigration and Naturalization Service ("INS")[4] initiated removal proceedings, charging plaintiff as "an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude" under § 212(a)(2)(A)(i)(1) of the Immigration and Nationality Act. On July 23, 2003, Asemani appeared before an immigration judge in Philadelphia for a hearing

---

[3]Plaintiff's lengthy litigation history is well summarized in defendant's memorandum.

[4]As of March 2, 2003, the functions of the INS were transferred to three agencies within the Department of Homeland Security, including United States Immigration and Customs Enforcement ("ICE") which is responsible for enforcing immigration laws.

on his removal. He was ordered detained pending a decision on his removal. That evening, plaintiff was housed at "The Roundhouse," a facility in Philadelphia operated by the Philadelphia Police Department, which was used as an overnight holding facility by the INS for aliens in custody.

At the time of plaintiff's detention in July 2003, the INS had an agreement with York County to provide housing for INS detainees. Under the agreement, York County officers provided medical and transportation services for INS detainees to and from the INS District Office in Philadelphia. Def. Ex. 10.

On July 23, 2003, Officers Dave Skaggs and Amy Enzor transported eight or nine detainees, including plaintiff, from the ICE Detention and Removal Office in Philadelphia to the York County facility, a two-hour trip. Officers Skaggs and Enzor are not ICE employees. The transport van was equipped with air conditioning and provided by ICE.

During the drive, other detainees alerted the officers that plaintiff was ill. At first, the officers suspected an escape ploy. When they realized that plaintiff was sick, they pulled over and called for an ambulance. Officer Skaggs rode with plaintiff in the ambulance to Ephrata Hospital. Plaintiff was examined at the hospital and a doctor found nothing was wrong with plaintiff. Plaintiff's illness was attributed to motion sickness.[5] Def. Ex. 11.

In November 2004, Asemani was released from ICE custody on an order of supervision. In July 2005, Asemani was arrested in Howard County for the attempted murder of his wife, and he is presently serving a 30 year sentence arising out of that occurrence.

---

[5]Plaintiff was admitted to the hospital under the wrong name. It is thought that there was insufficient time before the ambulance arrived to confirm which detainee was ill. Another detainee in Philadelphia had complained he was unwell and the officers had mistakenly used his name when identifying plaintiff to the medical personnel.

Summary Judgment Standard

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Analysis

Plaintiff's asserts he was falsely arrested and imprisoned by ICE because the United States District Court for the District of Columbia determined he was a "U.S. national" for the purposes of the Foreign Sovereign Immunities Act (FSIA) in *Asemani v. Islamic Republic of Iran*, 266 F. Supp

2d  24 (D.D.C. 2003).⁶  Thus, plaintiff contends that he is not an "alien" but a "U.S. national" thereby rendering the removal proceedings and his arrest and detention unlawful.

Manifestly, plaintiff's reliance on *Asemani v. Islamic Republic of Iran* is misplaced. The FSIA authorizes certain actions against a foreign state in courts of the United States. In *Asemani v. Islamic Republic of Iran*, plaintiff alleged that the Islamic Republic of Iran, the Ayatollah Khamanei, and several agencies of Iran had tortured and falsely detained him for his adherence to the Baha'i faith. In concluding that plaintiff had met certain threshold requirements to plead a FSIA claim, the court ruled, "[P]laintiff has demonstrated his permanent allegiance to the United States sufficient to constitute him a 'national' within the meaning of the FSIA.  That is all that this Court must decide at this time for purposes of the current case." *Id.* at 26.⁷ As a matter of law, this narrow ruling has no bearing on whether plaintiff was lawfully detained as an alien subject to removal proceedings under the Immigration and Nationality Act. Furthermore, on March 9, 2004, the Board of Immigration Appeals ruled that Asemani was an alien, notwithstanding the district court's preliminary determination of his status for the purpose of stating a claim under the FSIA.⁸ Plaintiff did not appeal the BIA decision.⁹

---

⁶*See* 28 U.S.C. § 1602 *et seq*.

⁷The United States Court of Appeals for the Fourth Circuit recently upheld a Board of Immigration Appeals interpretation of "national of the United States" to mean that a citizen may only acquire U.S. nationality by birth or completing the naturalization process. *See Fernandez v. Keisler,* 502 F.3d 337, 351 (4th Cir. 2007).

⁸Courts will defer to an interpretation of an open-ended provision of the Immigration and Nationality Act by the Board of Immigration Appeals if it is a "permissible construction of the statute." *See Chevron v. U.S.A. Inc., v. Natural Resources Defense Council, Inc*., 467 U.S. 837, 843 (1984).

⁹To the extent plaintiff is indirectly seeking review of his order of removal, this court is
(continued...)

As relevant here, a false arrest is one made without probable cause and for improper purpose. *See Boykin v. Bloomberg University of Pennsylvania*, 893 F. Supp. 378, 397 (M.D. Pa. 1995).[10] As a matter of law, Asemani, an alien previously convicted of an aggravated felony within the contemplation of the Immigration and Nationality Act, was deportable and was lawfully detained by ICE. The false arrest and false imprisonment claims are without merit.

Plaintiff's claims based on negligence fare no better. The United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian,* 453 U.S. 156, 160 (1981). Sovereign immunity is waived only when the waiver is unequivocally expressed. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). Courts must strictly construe all purported waivers of sovereign immunity in favor of the sovereign. *See Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005).

The limited waiver of sovereign immunity in the FTCA contains an "independent contractor" exception. *See Robb v. United States*, 80 F.3d 884, 887 n. 2 (4th Cir. 1996). The critical factor for distinguishing between a federal actor and an independent contractor under the FTCA is "the authority of the principal to control the detailed performance of the contractor." *Logue v. United States*, 412 U.S. 521, 527 (1973). In *Logue*, the Supreme Court considered whether a county jail's employees were independent contractors of the United States in the context of the FTCA. *See* 412

---

[9](...continued)
without jurisdiction. Jurisdiction to review orders of removal are vested exclusively with the courts of appeal ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act." 8 U.S.C. § 1252(a)(5).).

[10]Under the FTCA, liability is reviewed "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b). The relevant events here occurred in Pennsylvania.

U.S. at 521. The Court examined the statute authorizing contracts with local jails and the contract between the local jail and the Federal Bureau of Prisons and concluded the jail was an independent contractor because the United States did not have "authority to physically supervise the conduct of the jail's employees." *Id.* at 530.

In this case, the relevant agreement shows clearly that the government had no control over the daily activities of the prison or its employees. Resp. Ex. 10. Although the government reserved the right to enter the prison to enforce minimum standards, daily supervision of prison operations and employees was the responsibility of local officials. A contractual provision to enforce regulatory compliance, without direct control over a contractor's daily work, is insufficient to demonstrate the agency relationship necessary for liability under the FTCA. *See Bloom v. United States*, 615 F. Supp. 1002 (E.D. Pa. 1985). Consequently, the officers involved in plaintiff's transportation between the York County facility and Philadelphia were employees of an independent contractor. Accordingly, this court lacks subject matter jurisdiction over any claims based on the acts or omissions of those officers. *See Robb*, 80 F.3d at 887 and n. 2.

## Conclusion

For the reasons set forth, this case presents no genuine issue as to any material fact and defendant is entitled to a judgment as a matter of law. An Order follows.


Date: December 4, 2007                    _/s/_____
                                          Andre M. Davis
                                          United States District Judge